**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JENNIFER DINGUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 3:25-cv-00977** |
| | ) | |
| **FRANK BISIGNANO,** ***Commissioner of Social Security*****,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Before the Court is a Report and Recommendation ("R&R") issued by the Magistrate Judge, recommending that the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Jennifer Dingus's application for disability insurance benefits ("DIB") be affirmed. (Doc. No. 22). Dingus filed objections to the R&R, which are ripe for review. (Doc. Nos. 23, 24, 27). For the following reasons, the Court will adopt the R&R. The decision of the Commissioner will be affirmed.

## I. Background

Dingus filed an application for DIB under Title II of the Social Security Act on October 7, 2021. (Doc. No. 11 at 15).[1] Her disability onset date is April 30, 2021 and her date last insured is March 31, 2024. (Id. at 17). Her claim was denied initially and on reconsideration. (Id. at 15). Dingus then had a hearing before an Administrative Law Judge ("ALJ"), who also denied her claim. (Id. at 12, 15–26).

---

[1] Citations to the Administrative Record (Doc. No. 11) reference the Bates-stamped numbers in large black print in the bottom right corner of each page.

The ALJ concluded that through March 31, 2024, Dingus "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id. at 18). Specifically, the ALJ concluded Dingus did not have physical or mental impairments that satisfied the regulatory disability threshold. (Id.) The ALJ found as follows:

1. Dingus had a moderate limitation in "understanding, remembering or applying information."
2. Dingus had a moderate limitation regarding "interacting with others."
3. Dingus had a moderate limitation with regard to "concentrating, persisting, or maintaining pace."
4. Dingus had a moderate limitation for "adapting or managing oneself."
5. Dingus did not meet the regulatory standard for a mental impairment; notably there was no "medically documented history of . . . depressive, bipolar, and related disorder, anxiety and obsessive-compulsive disorder."

(Id. at 18–19). Then the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the following residual functional capacity: The claimant could lift and carry only twenty pounds occasionally, ten pounds frequently; sit six out of eight working hours; stand and/or walk six out of eight working hours. The claimant could occasionally engage in all postural activities, including climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant should have avoided concentrated exposure to extreme temperatures. The Claimant would have required access to a restroom during work hours but would not have required more than customarily allowed breaks. The claimant would have been limited to performing simple and low-level detailed tasks only. The claimant would have been able to maintain concentration, persistence, and pace for two hours at a time for those tasks only, that would be for an eight-hour workday with customary breaks. The claimant could have occasional interaction with the general public and coworkers, frequent interaction with supervisors. The claimant would have been able to adapt to only occasional workplace changes. The claimant should not have worked around large crowds, such as at sporting events or theaters.

Dingus filed this lawsuit. In her brief to the Magistrate Judge to reverse the ALJ's decision, she focused on the ALJ's assessment of the opinion of Pametria Brown, LMSW. She argues that the ALJ's assessment of Brown's opinion was not supported by substantial evidence.

The ALJ found Brown "less persuasive" when compared to other health care physical and mental providers. (Id. at 24). This was because Brown's opinion was "not well supported by objective medical findings, it is internally inconsistent at times, and it is generally inconsistent with the record as a whole." (Id.) Brown's opinion is in Exhibit 21-F and consists of three pages. (Id. at 1073). Regarding Dingus' ability to adjust to a job, Brown opined that Dingus could frequently follow work rules, constantly use judgment, occasionally relate to coworkers, function independently, and maintain concentration, and rarely deal with the public, interact with supervisors, and deal with work stressors. (Id.) Brown was specifically required to describe "any limitations and include the medical/clinical findings." Brown cited Dingus' "significant history of anxiety and does not respond well to criticism" as well as Dingus' subjective fear of "being judged by others." (Id.) Regarding Dingus ability to make job performance adjustment, Brown opined Dingus could occasionally understand, remember and carry out "complex job instructions, detailed, but not complex job instructions and simple job instructions." To support her evaluation, Brown noted Dingus' "history of trauma" that "creates distortions" and memory gaps. (Id. at 1074). Regarding making personal-social adjustment, Brown opined that Dingus could frequently maintain her personal appearance, but rarely "behave in an emotionally stable manner, relate predictably in social situations," and "demonstrate reliability." (Id. at 1074). To support her opinion, Brown cited Dingus' diagnosis of Agoraphobia, Generalized/Anxiety Disorder and PTSD as "clinical limitations" that "impact her social and personal impairment." (Id.) Finally, Brown opined that in the workplace Dingus would need more than the usual work breaks, her mental

impairment would interfere with her working a normal eight-hour workday, and cause her to miss more than four days of work per month. Brown offered no explanation for her opinion that Dingus' impairments are consistent with her symptoms and functional limitations. (Id. at 1075).

The ALJ was not persuaded by Brown's opinion for several reasons. First, Brown inconsistently opined that Dingus could understand, remember and carry out both complex and simple job instructions occasionally. Second, Brown made only brief and vague references to objective findings. (Id. at 24). The ALJ did not accept that Dingus' "ability to perform basic mental work activities" were limited to the extent suggested by Brown. (Id. at 25).

Before the Magistrate Judge, Dingus made the same arguments she now presents here as objections to the R&R. The Magistrate Judge deferred to the agency rule that the "ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source." (Doc. No. 22 at 15). The Magistrate Judge did not otherwise address Dingus' arguments that she now presents to this Court as objections to the R&R.

## II. Scope of Review

Under Federal Rule of Civil Procedure 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2). Objections may not merely restate what was already presented to the Magistrate Judge. See VanDiver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004). If proper objections are raised, the district court judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). However, when improper objections are made, it relieves the Court of the duty of

reviewing the objections. Howard v. Sec'y of Health & Hum. Servs., 932 F.2d 505, 509 (6th Cir. 1991). Here, Dingus' objections are not proper because they repeat her arguments to the Magistrate Judge. VanDiver, 304 F. Supp. 2d at 937 (E.D. Mich. 2004) (finding that an objection to a report and recommendation "that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge"). This is apparent when Dingus' objections are compared to her arguments before the Magistrate Judge. Dingus' failure to properly object permits the Court to accept the R&R and affirm the decision denying disability benefits to Dingus.

## III. Dingus' Objections

Objection One

Dingus states: "The R&R Fails to Acknowledge the Documented Deterioration in Judgment, Impulse Control, and Insight That Materially Supports [] Brown's Opinion." (Doc. No. 23 at 2). This argument was presented to the Magistrate Judge. In her brief before the Magistrate Judge, Dingus argued that her "most recent medical records show that she has poor judgment/impulse control, and her records show her efforts to leave her home and deal with others have caused numerous adverse symptoms." (Doc. No. 14 at 7). She argued that the ALJ ignored her deterioration in judgment, impulse control, and insight as documented by Brown, and that the ALJ did not possess the requisite expertise to conclude that "she did not suffer from limitations that were consistent with [] Brown's opinion." (Id. at 9–10).

Objection Two

Dingus states: "The R&R Endorses the ALJ's Improper Substitution of Lay Judgment for Clinical Expertise." (Doc. No. 23 at 4). Dingus argues that "[t]he R&R quotes with approval the

ALJ's demand that [] Brown's opinion be corroborated by 'objective findings (e.g., psychomotor agitation)" (Id.) (citation omitted).

Objection Three

Dingus states: "The R&R Failed to Address the ALJ's Reliance on State Agency Record Reviewers Who Never Reviewed Dingus' Mental Health Records." (Doc. No. 23 at 6). In her briefing before the Magistrate Judge, Dingus argued: "The ALJ cannot rely on the prior administrative medical findings of the state agency's psychological record reviewers, who did not review any of Dingus' mental health records." (Doc. No. 14 at 13).

Objection Four

Dingus states: "The R&R Failed to Address the ALJ's Inconsistent Application of the Subjective Complaints Standard." (Doc. No. 23 at 8). She argued to the Magistrate Judge that

> [t]he ALJ never explained why Dingus's subjective complaints were reasons to discount the physical limitations but not the mental limitations of the record reviewers, when mental health impairments are less subject to verification through objective evidence and more reliant on subjective statements.

(Doc. No. 14 at 14–15).

Objection Five

Dingus states: "The R&R's 'Internal Inconsistency' Rationale Ignores the Regulatory Distinction Between Understanding, Remembering, and Applying Information." (Doc. No. 23 at 9). Dingus argued before the Magistrate Judge:

> [] Brown's explanations also support her opinions. For instance, she believed that Dingus was intelligent enough to understand simple, detailed, and complex instructions, but that her mental impairments made it difficult for her to remember and carry them out, due to gaps and distortions in her memory. This is consistent with the Agency regulations, which recognize that the ability to understand information is different than the ability to remember information, which is different than the ability to apply information. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(f)(i).

(Doc. No. 14 at 12).

Objection Six

Dingus states: "The R&R Does Not Acknowledge the ALJ's Unsupported Inferences from Treatment History, Work History, and Daily Activities." (Doc. No. 23 at 10). Before the Magistrate Judge she argued that "[t]he ALJ's other reasons for dismissing Dingus's statements about mental health limitations do not withstand scrutiny." (Doc. No. 14 at 15). These reasons included Dingus' lack of medication and inpatient treatment, history of quitting jobs for non-disability reasons, and ability to do daily activities. (Id. at 16–17).

## III. Dingus' Reliance on Brown

Dingus' principal substantive argument is that the Court and the ALJ should accept Brown's opinion as controlling. Indeed, Dingus makes this clear. "Ms. Brown's opinion, supported by approximately 11 direct sessions and access to roughly 25 prior Imani Behavioral Health records over six months, is the most reliable opinion in the record." (Doc. No. 23 at 2). However, close inspection of Brown's opinion reveals the shortcomings in her opinion. First, Brown makes no reference to her sessions with Dingus or the records at Imani Behavioral Health in her opinion contained in Exhibit 21F (Doc. No. 11 at 1074–75). Second, Dingus doubles down that the ALJ and the Magistrate Judge wrongly rely on the "generally unremarkable" evaluation of Dingus' mental status. Instead, Dingus argues that the "documented deterioration in Dingus' judgment/impulse control from 'excellent' to 'poor' and her insight from 'good' to 'fair' is evidence that supports Brown's opinion." (Doc. No. 23 at 1). This may be true, but the real problem is that "documented deterioration" is not referenced in Brown's opinion. (Doc. No. 11 at 1073–74). Brown's failure to do so is particularly troubling because her Medical Sources Statement specifically directed her to provide an assessment based on her examination and in items

I.9, II. 4, and III. 5. Third, even more troubling is Brown's opinion that Dingus' impairments are "reasonably consistent with the symptoms and functional limitations described in" the evaluation. But Brown failed to explain why, even though the Medical Source Statement specifically directed "If yes, please explain." (Doc. No. 11 at 1075). These issues create substantial pause about Brown's opinions.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Magistrate Judge's R&R (Doc. No. 22) will be approved and adopted. The decision of the Commissioner will be affirmed.

An appropriate Order will enter.

Waverly D. Crenshaw, Jr.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE